SAAUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20744-COOKE/DAMIAN

ANIMACORD LTD,

    Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

    Defendants.

_____/

**REPORT AND RECOMMENDATION AS TO
PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT**

THIS CAUSE came before the Court on Plaintiff, ANIMACORD LTD.'s ("Plaintiff" or "Animacord"), Motion for Entry of Default Final Judgment against Defendants, The Individuals, Partnerships And Unincorporated Associations Identified On Schedule "A" (collectively, "Defendants"), [ECF No. 76] (the "Motion"). This matter was referred to the undersigned for Report and Recommendation by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 7]. *See* 28 U.S.C. § 636.

THIS COURT has considered Plaintiff's Motion and supporting documents and the pertinent portions of the record. The Court notes that Defendants did not file a response to the Motion, and the time to do so has passed. For the following reasons, it is recommended that Plaintiff's Motion for Entry of Default Final Judgment [ECF No. 76] be granted.

I.  **BACKGROUND**

**A. Factual Background**

As alleged in the Complaint, Plaintiff, Animacord, is an international licensing company and studio that specializes in worldwide distribution of content, consumer products rights, and brand management and is the owner of all rights, title, and interest in the family animated series titled, "Masha and The Bear." [ECF No. 1 at ¶ 10]. According to the Complaint, the Masha and The Bear series is broadcast throughout the world, including in South Florida, under multiple world-famous common law and federally registered copyrights and trademarks and copyrights. *Id*. at ¶ 12. Plaintiff alleges that in addition to the television series, goods bearing and reproducing the Masha and The Bear trademarks and copyrights (the "Masha and The Bear Marks") are sold through authorized retailers throughout the United States, including within South Florida. *Id*. at ¶ 15. Plaintiff further alleges that genuine and authorized products bearing and reproducing the Masha and The Bear Marks are widely legitimately advertised, promoted, and distributed by and through Animacord and its authorized partners, including but not limited to Amazon. *Id*. at 16; *see also* [ECF No. 5-1 (Belkova Declaration in Support of TRO) at ¶¶ 6-7].

Plaintiff is the owner of all rights, title, and interest in the trademarks and copyrighted works identified in the Complaint and in Schedules B, C, and D attached to the Declaration of Iullia Belkova submitted in support of Plaintiff's Motion for Temporary Restraining Order (the "Belkova Declaration"). [ECF No. 1 at ¶¶ 4-5; ECF No. 5-1]. According to the Complaint and Motion, the Masha and The Bear Marks are valid and registered trademarks on the Principal Register of the United States Patent and Trademark Office. [ECF No. 1 at ¶ 25; ECF No. 5 at p. 3]. Copies of the federal registrations for the Masha and The Bear Marks and copyrighted works are attached to the Complaint as Exhibits 1 and 2. [ECF Nos. 1-1 and 1-

2]. The Masha and The Bear Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified in the trademark registrations, and the Marks have been used by Plaintiff in interstate commerce to identify and distinguish Plaintiff's television series and associated merchandise for an extended period. [ECF No. 1 at ¶¶ 26-27]. Plaintiff alleges the Masha and The Bear Marks qualify as a famous mark as that term is used in 15 U.S.C. § 1125(c)(1), that Plaintiff has extensively used, advertised, and promoted the Masha and The Bear Marks in the United States in association with their merchandise, and that the Masha and The Bear Marks are a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned. [ECF No. 1 at ¶¶ 28-31; ECF No. 5-1 at ¶ 8].

Plaintiff retained the services of investigators to investigate Defendants' internet based e-commerce stores and commercial websites operating under the Defendants' Seller IDs. *See* Belkova Decl. in Support of TRO [ECF No. 5-1] at ¶ 16 and Guerra Decl. in Support of TRO [ECF No. 5-2] at ¶ 5. Plaintiff's investigator accessed each of the Defendants' internet based e-commerce stores operating under the Defendants' Seller IDs and placed orders for products offered for sale bearing, or suspected to be bearing, at least one of the Masha and The Bear Marks at issue in this action from each Defendant. *See* Belkova Decl. in Support of TRO [ECF No. 5-1] at ¶ 15. Based upon the investigation, Plaintiff's investigator and representative determined that products sold by and obtained from each of the Defendants were not genuine or authentic versions of Plaintiff's products. *See id.* at ¶¶ 17-18.

Based upon his investigation, Plaintiff alleges Defendants have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Masha and The Bear Marks. *See id.*; *see also* Compl. [ECF No. 1] at ¶ 38 . Defendants are not now, nor have they ever been,

authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Masha and The Bear Marks. *See* Compl. [ECF No. 1] at ¶ 40; Belkova Decl. in Support of TRO [ECF No. 5-1] at ¶ 15.

### B. Procedural Background

On February 23, 2021, Plaintiff initiated this action against Defendants seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition, common law trademark infringement (15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d)), and the All Writs Act (28 U.S.C. §1651(a)). [ECF No. 1]. On March 1, 2021, the Court entered a sealed order granting Plaintiff's Ex Parte Application for Entry of Temporary Restraining Order. [ECF No. 10]. On the same date, March 1, 2021, the Court entered an Order authorizing Plaintiff to serve the summonses, Complaint, and all subsequent filings in this matter upon Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website. [ECF No. 11].

Pursuant to the Court's Order authorizing alternate service of process, Plaintiff served Defendants on March 23, 2021, by email and via publication by posting a copy of the Complaint and summons on Plaintiff's designated website. *See* ECF No. 67-1. Plaintiff filed proof of service on August 12, 2021. [ECF No. 66].

Plaintiff has voluntarily dismissed all claims with prejudice against certain Defendants. *See* [ECF Nos. 18-19, 22-24, 28, 30, 37-40, 42-65, 73-75, 95-96, 98]. On March 22, 2022, Plaintiff submitted an updated schedule of the remaining Defendants against whom Plaintiff seeks entry of Default Final Judgment. [ECF No. 100-1]. Schedule "A" attached hereto identifies those remaining Defendants.

No Defendant has appeared or responded to the Complaint. After Defendants failed to appear, Plaintiff moved for a clerk's entry of default against the Defendants [ECF No. 67], which the Clerk of Court subsequently entered on August 13, 2021 [ECF No. 68]. Plaintiff now moves for entry of default final judgment against all remaining Defendants. [ECF No. 76].

As of the date of this Report, Defendants have not responded to the Complaint, the Motion, nor any other filings in this case. Nor has any attorney made an appearance on any Defendant's behalf.

## II.   APPLICABLE LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *Surtain*, 789 F.3d at 1245. Thus, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when ... additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F.Supp.2d at 1217, 1223 (finding an evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martnez Corp.*, No. 14-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

### III. DISCUSSION

With the foregoing in mind, the Court turns to the allegations in the Complaint and the requested relief.

#### A. Claims

Plaintiff seeks a default judgment for the relief sought in the Complaint, asserting the following claims against Defendants: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. section 1114 ("Claim 1"); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) ("Claim 2"); (3) unfair competition under Florida common law ("Claim 3"); and (4) trademark infringement under Florida common law ("Claim 4"). *See* Compl. ¶¶ 52-88.

##### 1. Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. Section 1114, provides liability for trademark

infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... which ... is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (alterations added). To prevail on its trademark infringement claim, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote and citations omitted).

### 2. False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. Section 1125(a) is the same as for a trademark counterfeiting and infringement claim — *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment).

### 3. Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademark created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381, 1986 WL 15668, at *3-4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' .... The proper test is 'likelihood of confusion....'").

### 4. Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217-18 (S.D. Fla. 2004).

7

**B. Liability**

The well-pleaded factual allegations of Plaintiff's Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendants' defaults. *See* Compl. ¶¶ 53-58, 60-66, 68-71, 73-76, 78-88. Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendants' liability for each of the claims asserted. Accordingly, entry of default judgment against Defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriate.

**C. Relief**

Plaintiff requests an award of equitable relief and monetary damages against Defendants for trademark infringement in Claim 1. The Court analyzes Plaintiff's request for relief as to Claim 1 only, as the judgment for Claims 2, 3, and 4—false designation of origin, common law unfair competition, and common law trademark infringement —is limited to entry of the requested equitable relief for Claim 1. *See generally* Motion.

*<u>Injunctive Relief.</u>* Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (alteration in original) (internal quotation marks omitted) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available even in the default judgment setting, *see, e.g.*, *PetMed Express*, 336 F. Supp. 2d at 1222–23, because Defendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent

further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") (alteration added).

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391–92, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Plaintiff has carried its burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added) (footnote omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales.") (alteration added). Plaintiff's Complaint and its submissions show that the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See, e.g.,* Compl. at ¶ 46.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's

reputation and goodwill if Defendants' infringing and counterfeiting continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products, and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1238, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.") (alteration added) (citation omitted); *see also World Wrestling Entm't, Inc. v. Thomas,* No. 12-21018-CIV, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for ... [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." (citations omitted)). Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Requiring

Defendants' listings and images be removed, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods, is an appropriate remedy to achieve this end.

*Statutory Damages.* In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. Section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. *See* 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citations omitted). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) (citations omitted) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV. A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain. *See, e.g.*, S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially appropriate in default judgment

cases due to infringer nondisclosure") (alteration added; citations omitted). This case is no exception.

Here, the allegations of the Complaint and the evidence establish the Defendants intentionally copied the Masha and The Bear Marks for the purpose of deriving the benefit of Plaintiff's famous reputation. Defendants have defaulted on Plaintiff's allegations of willfulness. *See* Compl. at ¶ 45; *see also Arista Records, Inc. v. Beker Enters.*, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (finding a court may infer willfulness from the defendants' default); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well plead allegations are taken as true). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The only available evidence demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were counterfeits of the Masha and The Bear Marks protected by federal trademark registration. *See* Belkova Decl. in Support of TRO at ¶¶ 15-18; Guerra Decl. in Support of TRO at ¶ 5. Based on the above considerations, Plaintiff has asked the Court to award statutory damages in the amount of $100,000.00 against each Defendant. *See* Mot. at 18. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. section 1117(c). The Court finds that this award of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is just. *See, e.g., Adidas AG v. adidascitycup.com,* No. 19-61353 (S.D. Fla. 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Abercrombie & Fitch Trading Co., v. artemis gesdy*, No. 19-60287 (S.D. Fla.

2019) (awarding plaintiff $1,000,000.00 against each defendant); *Chanel, Inc. v. fashionbestchanel.com*, No. 19-60991 (S. D. Fla. 2019) (awarding plaintiff $1,000,000.00 against each defendant); *Fendi, S.r.l. v. socjmkfn*, No. 18-63101 (S.D. Fla. 2019) (awarding plaintiff $1,000,000.00 against each defendant).

<u>Damages As to Claims 2-4.</u> As indicated above, Plaintiff's Complaint also sets forth causes of action for false designation of origin (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). As to Claims 2-4, the allowed scope of monetary damages is also encompassed in 15 U.S.C. Section 1117(c). Accordingly, judgment on those claims (Counts II-IV) should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   CONCLUSION

Accordingly, it is hereby respectfully RECOMMENDED that:

1. Plaintiff's Motion for Entry of Final Default Judgment [ECF No. 76] be **GRANTED**;

2. A final default judgment and permanent injunction be entered in favor of Plaintiff, Animacord Ltd, and against Defendants, The Individuals, Partnerships And Unincorporated Associations Identified On Schedule "A," attached hereto.

IT IS SO REPORTED.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the

Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 24th day of March 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE